# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**HOWARD HENRY BURKS, JR.**                                          **PLAINTIFF**

**V.**                        **NO. 5:19CV00337 LPR/PSH**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION[1]**                        **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Howard Henry Burks, Jr. ("Burks"), applied for disability benefits on April 25, 2017, alleging disability beginning on October 7, 2013.[2] (Tr. at 10).

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] Mr. Burks amended his alleged onset date to November 4, 2015. (Tr. at 10).

The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Burks' claim. (Tr. at 20). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Burks has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.  The Commissioner's Decision:

The ALJ found that Mr. Burks had not engaged in substantial gainful activity since the amended alleged onset date of November 4, 2015. (Tr. at 13). At Step Two of the sequential five-step analysis, the ALJ found that Mr. Burks had the following severe impairments: degenerative disc disease, osteoarthritis, a history of substance abuse, left leg atrophy, bipolar disorder, personality disorder, impulse control disorder, and a mood disorder. *Id.*

After finding that Mr. Burks' impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Mr. Burks had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with limitations. (Tr. at 15). He could sit for 6 hours in an 8-hour workday and stand or walk for 1 to 2 hours in an 8-hour workday. *Id.* He would require the use of a walking stick for ambulation. *Id.* He could occasionally climb, stoop, crouch, kneel, and crawl. *Id*. He is limited to unskilled, rote activities, and he can understand,

remember, and follow concrete instructions. *Id*. Contact with supervisors and coworkers must be superficial. *Id*. He could meet, greet, and give simple instructions and directions. *Id*. He could have limited contact with the public. *Id*.

The ALJ next found that Mr. Burks was unable to perform any of his past relevant work. (Tr. at 18). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Mr. Burks's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 19-20). Therefore, the ALJ found that Mr. Burks was not disabled. *Id*.

### III. Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly

3

detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Mr. Burks' Arguments on Appeal

Mr. Burks contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) the ALJ did not properly consider his subjective complaints; (2) the ALJ improperly discounted the opinion of Dr. Dennis

4

Yelvington, M.D., Mr. Burks's PCP; (3) the ALJ failed to fully develop the record; and (4) the ALJ did not carry his burden at Step Five. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

The ALJ's opinion was not long, and was less detailed than it could have been, but his decision was supported by the evidence. Mr. Burks complained of chronic back and joint pain. However, he did not seek treatment on a consistent basis throughout the relevant time-period and did not require aggressive treatment.[3] He saw his PCP, Dr. Yelvington, approximately ten times in 2016 and 2017, and at those visits, Dr. Yelvington did not perform any physical clinical exams. (Tr. at 342-412). Evidence of objective imaging was minimal: a 2016 lumbar MRI showed some facet arthropathy and mild-to-moderate foraminal narrowing, but there is no evidence of subsequent objective testing, although Dr. Yelvington suggested imaging would be beneficial.[4] (Tr. at 298-299, 372). Dr. Yelvington recommended exercise and resumption of normal activities, and he suggested that Mr. Burks quit smoking and maintain an optimal weight.[5] (Tr. at 342-351). A physician's recommendation to

---

[3] The relevant time-period is November 4, 2015 through the date of the ALJ's decision, which was March 15, 2019. (Tr. at 20).

[4] Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

[5] Mr. Burks had a history of cocaine, hydrocodone, marijuana, and alcohol abuse. (Tr. at 28-30, 37-48, 271-290).

exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

A consultative medical expert examined Mr. Burks on January 7, 2014, and found he had a limited ability to walk, stand, lift, and carry, but an "ok" ability to sit. (Tr. at 260-268). The RFC for sedentary work aligns with this opinion. A second medical examiner saw Mr. Burks on July 24, 2017, and he found no muscle spasms and negative straight-leg raise. (Tr. at 308-313). He found normal range of motion in the lumbar spine and slightly reduced range of motion in the cervical spine. *Id*. He noted no sensory abnormalities, but commented that Mr. Burks walked with a cane. *Id*. This examiner did not assign functional restrictions. *Id*. The examiner suggested that Mr. Burks resume mental health treatment (Mr. Burks had received counseling and sporadic medication management from mental health specialists in 2016, but discontinued such treatment the same year; he also said he discontinued bipolar medication). (Tr. at 48, 315-322). *See Smith v. Shalala*, 987 F.2d 1371, 1374-75 (8th Cir. 1993)(when a claimant has not treated his anxiety, the ALJ is justified in ruling out anxiety as an impairment).

Mr. Burks alleged severe psychological problems but only sought outpatient treatment a few times in 2016. (Tr. at 271-290). In November 2016, he said that Seroquel helped him sleep and improved his moods, and that he did not hear

6

intrusive auditory hallucinations as much. (Tr. at 289-290). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). At visits with a psychiatrist (whom Mr. Burks only saw twice), he showed generally normal mental status, with adequate concentration, coherent speech, and logical thought-processes. (Tr. at 271-290). All of Mr. Burks' providers said that he could benefit from regular mental health therapy, but he did not continue with therapy.

On July 26, 2017, Samuel Hester, M.D., performed a mental consultative examination. He found that Mr. Burks could perform most activities of daily living autonomously.[6] (Tr. at 315-322). Mr. Burks reported that psychiatric medication helped him. *Id*. At the time, he still used marijuana and alcohol. *Id*. He was alert and oriented. *Id*. Dr. Hester found some limitations in Mr. Burks' ability to interact with others and sustain concentration, and said that he may not be able to cope with mental work demands unless he got back into treatment. *Id*. Dr. Hester also said that chronic pain may affect his ability to complete tasks in an acceptable time frame. *Id*. Two state-agency reviewing experts found similar moderate limitations in work functions, and limited Mr. Burks to unskilled work. (Tr. at 15, 85-88, 136-140). The

---

[6] Mr. Burks said he could fix simple meals, perform some chores, shop for food, visit with family, watch TV, and handle his finances. (Tr. at 40-47, 222-229). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

RFC reflected the ALJ's consideration of these three opinions (the RFC was for simple, unskilled work).

The ALJ properly considered Mr. Burks' subjective complaints of pain and mental impairments. When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). An ALJ need not explicitly discuss each factor, and he may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Id.*

Social Security Ruling 16-3p removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. 2016 SSR LEXIS 4 ("SSR 16-3p"); 20 C.F.R. §§ 404.1527, 404.927. SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the familiar factors (previously described by ALJs as the *Polaski* factors, listed above) that were in place prior to the new ruling. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D.

Mo. Jan. 9, 2017); *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

The ALJ did not specifically address Mr. Burks' ability to perform daily activities, but Mr. Burks discussed that at the hearing, and the ALJ considered the reviewing experts' opinions which detailed those activities. (Tr. at 18). He referenced Mr. Burks' complaints of "persistent, diffuse pain," and the fact that he did not require aggressive treatment for pain. (Tr. at 16). The ALJ discussed the MRI results, as well as Mr. Burks' use of a cane and the functional limitations Mr. Burks experienced. *Id.* Finally, he considered the fact that Seroquel helped with Mr. Burks' mental health symptoms. *Id.* The ALJ properly considered subjective complaints, and determined that they were not entirely consistent with the balance of the medical record.

Mr. Burks next asserts that the ALJ did not properly consider Dr. Yelvington's opinion. The ALJ did not reference Dr. Yelvington by name, but he mentioned the one-page letter he submitted (dated March 31, 2017), which said that Mr. Burks could not work due to osteoarthritis. (Tr. at 16, 297). An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) Dr. Yelvington did

9

not perform any clinical physical examinations, and he did not reference any objective findings in his one-page letter; he based his opinion largely on subjective complaints. An ALJ is entitled to give less weight to the opinion of a treating physician where the physician's opinion is based largely on the claimant's subjective complaints rather than on objective medical evidence. *See Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005). Dr. Yelvington's opinion that Mr. Burks could not work was inconsistent with conservative, irregular treatment, and it was also inconsistent with Dr. Yelvington's recommendation to resume activities and exercise. Dr. Yelvington's opinion did not deserve controlling weight.

As for Mr. Burks' third point on appeal, an ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving his disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Here, there were multiple medical opinions, from both reviewing and examining doctors. Mr. Burks did not submit very many medical records pertaining to the relevant time-period, but those he did submit were consistent with the experts' findings of mild-

to-moderate functional limitations. Mr. Burks' attorney did not suggest she needed more time to submit additional records, and it was not incumbent upon the ALJ to go on a "fishing expedition" for records. The ALJ based his decision on a fully developed record.

Finally, Mr. Burks argues that the ALJ should have found limitations on his ability to concentrate to be disabling. The ALJ asked the VE this hypothetical: if Mr. Burks was off task for 25% of the day due to problems in concentration, persistence, and pace, would jobs be available for him to perform? (Tr. at 52-53). The VE said no. *Id*. However, the record did not reflect that Mr. Burks actually experienced such problems with concentration, persistence, and pace. On the only two occasions he saw a psychiatrist, the doctor noted intact concentration, and Dr. Hester said that Mr. Burks could sustain persistence. (Tr. at 274-290). Mr. Burks could perform a variety of daily activities requiring concentration, persistence, and pace. He discontinued mental health treatment, although it was recommended, which suggests his mental limitations were not disabling. The ALJ properly considered the VE testimony at Step Five and incorporated it into a well-supported RFC.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Mr. Burks was not disabled. The ALJ properly analyzed Mr. Burks' subjective

complaints; he adequately considered Dr. Yelvington's opinion; he based his decision on a fully developed record; and he did not err at Step Five. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 4th day of September, 2020.

_____
UNITED STATES MAGISTRATE JUDGE